UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| LAUREL VALLEY OIL CO., ) | CASE NO. 05-64330 |
| Debtor ) | |
| ) | ADV. NO. 07-6109 |
| ANTHONY J. DEGIROLAMO, ) | |
| Plaintiff, ) | JUDGE RUSS KENDIG |
| ) | |
| v. ) | **MEMORANDUM OF OPINION (NOT** |
| ) | **INTENDED FOR PUBLICATION)** |
| TRUCK WORLD, INC., ) | |
| Defendant. ) | |
| ) | |

Now before the Court is the Motion for Summary Judgment filed by Defendant Truck World, Inc. on February 29, 2008.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H). The following constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not a result of direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Laurel Valley Oil Co. (hereafter "Debtor") was forced into bankruptcy on July 27, 2005 via an involuntary Chapter 11 petition. The case was later converted to one under Chapter 7 of the Bankruptcy Code. The plaintiff in this adversary proceeding, Anthony J. DeGirolamo, was appointed the chapter 7 trustee. Prior to the involuntary filing, Debtor was in the business of buying and selling petroleum products, including diesel fuel.

Beginning February of 2000, purportedly due to the need for immediate cash flow, Debtor began selling fuel on a prepaid basis at a loss. Debtor's primary supplier of diesel fuel was, at all times relevant to this litigation, Marathon, from which Debtor purchased fuel on 10-12 day payment terms.

Defendant was a prepaid fuel customer of Debtor, including in the one-year period prior to filing. Defendant purchased diesel fuel from Debtor on a prepaid basis in the amount of $18,549,307.18 over the course of that period. During that period, Defendant had

1

the option of purchasing fuel directly from Marathon, albeit not on a prepaid basis, and always at a higher price.

On July 3, 2007, Plaintiff filed the instant adversary proceeding. Plaintiff alleges that Debtor's transfers of diesel fuel to Defendant in the year prior to filing were fraudulent transfers avoidable under both federal and state law. In addition, Plaintiff alleges that the transfers, to the extent that they occurred in the 90-day window prepetition, were preferential transfers, likewise avoidable under both federal and state law. Finally, Plaintiff asks the Court to disallow the general unsecured claim for $1,136,190.20 filed by Truck World as an entity from which property of the estate is recoverable.

Defendant filed an answer on August 9, 2007, and the instant motion for summary judgment on February 29, 2008. Defendant argues that Plaintiff failed to produce evidence sufficient to support a finding in Plaintiff's favor on at least one element of each of its first seven claims (fraudulent and preferential transfer claims), and that its eighth claim (disallowance of Truck World's claim against the estate) is meritless because it is contingent on the success of at least one of the other seven.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Fed. R. Bankr. P. 7056, which incorporates Fed. R. Civ. P. 56 into bankruptcy practice. That rule provides, in relevant part,

> [t]he judgment shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### II. Remaining Issues of Material Fact

Plaintiff did not move for summary judgment; it only opposed summary judgment for Defendant. As such, the only thing the Court needs to consider is whether Plaintiff has raised sufficient issues of material fact on each element of each of the claims that it must prove at trial. For the reasons discussed below, the Court concludes that, particularly when viewing the evidence in the light most favorable to the nonmoving party (Plaintiff), there are

2

numerous such issues of material fact unresolved, precluding summary judgment for Defendant on any counts of Plaintiff's complaint.

Defendant argues that Plaintiff has failed to make a showing of fact sufficient to survive a motion for summary judgment on three factual issues. The first is whether Debtor, in selling discounted, prepaid fuel to Truck World, intended to hinder, delay, or defraud any of Debtor's creditors. This is an essential element of both Counts I and III of Plaintiff's complaint, which invoke substantially similar fraudulent transfer provisions of federal and state law, respectively, and is essential to one of two theories of recovery under Ohio's preferential transfer statute. The second is whether Debtor received less than a reasonably equivalent value in exchange for the fuel it sold to Truck World. This is an essential element of Counts II, III, IV, and V of Plaintiff's complaint. Third, Defendant asserts that the transfers were unambiguously contemporaneous exchanges for new value, which would serve as a bar to the federal preferential transfer claims in VII of Plaintiff's complaint.

### A. Debtor's Actual Intent to Hinder, Delay, or Defraud Creditors

Defendant asseverates that Plaintiff cannot prove that Debtor had any actual intent to hinder, delay, or defraud creditors of the estate when it sold diesel fuel to Truck World on a discounted basis. Showing an actual intent to defraud on the part of the transferor is an essential element of Claims I and III of Plaintiff's complaint. See 11 U.S.C. § 548(a)(1)(A) (allowing for avoidance of actually fraudulent transfers); Ohio Rev. Code § 1336.04(A)(1) (part of the Ohio Uniform Fraudulent Transfer Act). It is also one of two theories of recovery under Ohio's preferential transfer statute, Ohio Rev. Code § 1313.56.

Defendant argues that Plaintiff's Complaint itself fails to allege sufficient fraudulent intent on the part of Laurel Valley in making the transfers to Truck World. Defendant argues that when Plaintiff alleged in its complaint that Debtor sold fuel to Defendant "in order to pay Marathon and its other business obligations" (Compl. ¶ 19), it implicitly conceded that Debtor did not do so in order to defraud any creditors of the estate. (Def.'s Mot. for Summ. J. 5.) This is an exercise in wishful thinking, not reading comprehension. Plaintiff is making, or seeking the opportunity to make, the case that Laurel Valley was engaged in a "Ponzi-like scheme[]" (Resp. of Pl. 23) of deliberately and perennially selling fuel at a loss in order to raise money quickly to satisfy preexisting debts. The fact that the operator of a Ponzi scheme raises money in order to pay preexisting creditors does not make such a scheme any less fraudulent.

Plaintiff has produced more than sufficient evidence at this stage of the proceeding to demonstrate that its allegations are not merely *pro forma* or speculative. Plaintiff has produced direct evidence of fraud in the form of deposition testimony tending to show that certain principals of Laurel Valley made false statements to customers of its prepaid fuel program in order to entice them into buying more fuel and deflect questions about how the company was able to offer such incredible prices. Viewed in the light most favorable to Plaintiff, this is evidence that Debtor's principals were willing to exacerbate the inevitable day of reckoning in exchange for merely forestalling it for as long as possible, with the costs

3

borne by the creditors who found themselves making claims against a greatly diminished pool of assets.

In addition, Plaintiff has produced circumstantial evidence of fraudulent intent. A finding of intent to hinder, delay, or defraud creditors may be made on the basis of circumstantial evidence, as direct proof of the debtor's fraudulent intent will rarely be available. Rieser v. Hayslip (In re Canyon Sys. Corp.), 343 B.R. 615, 636 (Bankr. S.D. Ohio 2006). Certain forms of circumstantial evidence have been held, or statutorily prescribed (at the state level), to be indicative of actual intent to defraud, and have acquired the moniker "badges of fraud." Silagy v. Gagnon (In re Gabor), 280 B.R. 149, 157 (Bankr. N.D. Ohio 2002). Badges of fraud can raise presumptions of actual fraudulent intent, and the presumptions can establish a prima facie case and shift the burden to the debtor to establish the absence of fraudulent intent. Id. A sufficient confluence of several badges can be conclusive evidence of fraudulent intent, absent significantly clear evidence of the debtor's legitimate supervening purpose. Id.

These badges exist, with some variation, under both federal and state law. Under Ohio's Uniform Fraudulent Transfer Act (UFTA), they include the following:

(1) Whether the transfer or obligation was to an insider;
(2) Whether the debtor retained possession or control of the property transferred after the transfer;
(3) Whether the transfer or obligation was disclosed or concealed;
(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
(5) Whether the transfer was of substantially all of the assets of the debtor;
(6) Whether the debtor absconded;
(7) Whether the debtor removed or concealed assets;
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Ohio Rev. Code § 1336.04(B) (West 2009). There is no such federal statutory enactment, but the concept of badges of fraud is long-established in federal judicial law. "Inadequacy[1] of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.'" U.S. v.

---
[1] This was misquoted in Defendant's brief, and in Schilling v. Montalvo (In re Montalvo), 333 B.R. 145, 148 (Bankr. W.D. Ky. 2005) (citing Leggett at 427) as "inaccuracy" of consideration. The Sixth Circuit authority, although much older, controls.

4

Leggett, 292 F.2d 423, 427 (6th Cir. 1961). A more recent and extensive list of badges of fraud from the Fifth Circuit lists

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

Soza v. Hill (In re Soza), 542 F.3d 1060, 1067 (5th Cir. 2008).

Plaintiff has made colorable allegations that the transactions lacked adequate consideration, that the financial condition of the transferor after the transactions in question gives rise to the inference of fraud, and that the cumulative effect of the series of transactions after prior debts were incurred and financial difficulties arose was to deplete the assets of the estate in return for buying time, denying reality, and attempting to cover for friends.

Plaintiff has therefore alleged sufficient fraudulent intent to carry its burden of persuasion, should the facts at trial support those allegations with the requisite quantum of proof.

Defendant also argues that Plaintiff has failed to satisfy the obligation imposed by Fed. R. Civ. P. 9(b), incorporated into bankruptcy practice by Fed. R. Bankr. P. 7009, to "state with particularity the circumstances constituting fraud" when alleging fraudulent conduct. The Court is inclined to ask how much more "particular" Defendant would have had Plaintiff's complaint be. Not only did the complaint quite plainly state the conduct alleged to be fraudulent—Debtor transferring property for less than its cost and value, then using the proceeds to buy more fuel to sell at a loss, depleting the company of value that could otherwise have been used to satisfy the claims of creditors—but attached to the complaint was a thirty-eight-page spreadsheet documenting every transaction alleged to be fraudulent and the amount alleged to have been lost to the eventual estate due to that transaction. It is only the fraudulent conduct which Rule 9(b) requires be alleged with particularity; the intent behind such conduct may be alleged generally. See Fed. R. Civ. P. 9(b).

Summary judgment for Defendant on Counts I and III of the complaint is therefore inappropriate.

### B. Reasonably Equivalent Value

Next, Defendant argues that Plaintiff cannot prove at trial that Defendant gave Debtor less than reasonably equivalent value in exchange for the prepaid fuel. Plaintiff must

5

make that showing to prevail on Counts II, IV, and V of Plaintiff's complaint, brought under 11 U.S.C. § 548(a)(1)(B), Ohio Rev. Code § 1336.04(A)(2) (West 2009), and Ohio Rev. Code § 1336.05(A) (West 2009), respectively, all of which fall under the rubric of "constructive fraud." Unlike actual fraud, which Plaintiff alleges in Counts I and III, the intent of the transferor is not an element of a constructive fraud action. See, e.g., Dayton Title Agency, Inc. v. White Family Cos. (In re Dayton Title Agency), 292 B.R. 857, 874 (Bankr. S.D. Ohio 2003).

The phrase "reasonably equivalent value" is not defined anywhere in the Bankruptcy Code. WRT Creditors Liquidation Trust v. WRT Bankr. Litig. Master File Defendants, 282 B.R. 343, 404 (Bankr. W.D. La. 2001) (citing Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1494 (5th Cir. 1993)). The Ohio UFTA establishes that reasonably equivalent value is given "if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement," Ohio Rev. Code Ann. § 1336.03(B) (West 2009), but is otherwise silent on the issue. The definition in § 1336.03(B) is useless in the instant case.

When the statutes are silent, in order to determine whether fair consideration or reasonably equivalent value was given, courts must review "all the surrounding circumstances to determine whether the transaction was fair." Gabor, 280 B.R. at 158 (citing John Ownbey Co. v. C.I.R., 645, F.2d 540, 545 (6th Cir. 1981)). In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer. Gabor at 158.

Summary judgment is rarely appropriate when an issue of reasonably equivalent value is under dispute. The question of whether a debtor received reasonably equivalent value is itself a factual one. Lisle v. John Wiley & Sons, Inc. (In re Wilkinson), 196 Fed. Appx. 337, 341 (6th Cir. 2006) (unpublished). Under the standard of Gabor and Ownbey Co., that factual question is itself to be resolved by reference to a broad array of other facts. In addition, under the Kress standard, a court must view each and every one of those facts in the light least favorable to the party seeking summary judgment. Given the volume of evidence submitted in this case, Defendant has set itself to an impossible task at this stage of the proceedings. The plaintiff has produced an industry expert report stating that the discounts Laurel Valley offered were 19.27 cents less per gallon than anything else available on OPIS, the Oil Price Information Service, a market index used by industry players to track the price of petroleum products, including diesel fuel. Truck World's purchaser was aware of OPIS, and the conduct of his firm makes it clear that the company was aware that it was getting a deal from Debtor that was incredibly good at best and impossibly good at worst. Before Laurel Valley began its discount program, Truck World habitually would attempt to play various suppliers against one another by taking its best offer from one supplier and attempting to get another supplier to meet or beat it. Once Truck World began getting substantial discounts from Laurel Valley, however, it stopped even trying to shop Laurel Valley's price to other suppliers. Asked why he stopped engaging in these price negotiations and never asked other suppliers to meet or beat Laurel Valley's price, Truck

6

World's officer in charge of fuel purchases, Michael Carney, stated that he simply didn't think that other suppliers would do it.

Diesel fuel is a fungible and widely marketable commodity. This has been recognized by both federal and state courts. See Cook v. U.S., 86 F.3d 1095, 1098 (Fed. Cir. 1996); Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 832 (Tenn. 2008). The president of Truck World, Gary Burke, also admitted in his deposition that diesel fuel is a commodity. Commodity prices can fluctuate considerably, but the market for most commodities, including diesel fuel, is nevertheless liquid. This Court's reasoning is in line with that of the Bankruptcy Court for the Northern District of New York:

> The Court recognizes, of course, that there is no bright mathematical line separating the reasonable discount from the constructively fraudulent discount. Instead, the standard varies depending on the precision with which the exchanged assets can be valued, and the ease with which they can be converted to cash. As a result, a large deviation from estimated market value may be considered reasonable where the transaction involves a unique object, or intangible property ... while the range of non-fraudulent discounts is much narrower for transactions involving cash, cash substitutes, or commodities with readily ascertainable market values.

Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Group, Inc.), 232. B.R. 565, 572 (Bankr. N.D.N.Y. 1999) (internal citations omitted). Defendant justifiably cites Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.), 6 F.3d 1119 (5th Cir. 1993) for the proposition that "[a]lthough the minimum quantum necessary to constitute reasonably equivalent value is undecided, it is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." Id. at 1125-26. However, Plaintiff does not dispute this. That same case also notes that "valuing consideration received is inherently fact-laden, turning, as it often does, on the case-specific circumstances surrounding the debtor's decision to enter the particular transaction." Id. at 1125 n.5 (citation omitted). That intrinsically militates against making valuation determinations at the summary judgment stage.

Summary judgment for Defendant on Counts II, IV, V, and VI (under its fraudulent-intent prong) of the complaint is therefore inappropriate. The issue of whether Debtor received reasonably equivalent value for the fuel it sold to Defendant is a genuine issue of material fact for trial.

### C. Fair Market Value

To the extent that fair market value is relevant to any of Plaintiff's claims, it is a factual issue, and Defendant's case suffers the same debility with respect to proving fair market value at the summary judgment stage as it suffers vis-à-vis proving reasonably equivalent value. Fair market value is essentially an inherently factual issue, and the fact that it is disputed in this case only further undermines Defendant's case for summary judgment. Defendant devoted a lengthy section of its brief to asserting that it had paid fair

7

market value, but this section is also thinly cited and does not appear to speak directly to any element of any of Plaintiff's claims.

### D. Preferential Transfer Defenses

#### 1. Contemporaneous Exchange for New Value

Next, Defendant asserts that the transfers within the 90-day preference window under 11 U.S.C. § 547(b)(4)(A) were unambiguously contemporaneous exchanges for new value, which, under 11 U.S.C. § 547(c)(1), is a defense to a trustee's attempt to avoid an otherwise preferential transfer.

There are three elements to the contemporaneous exchange defense under 11 U.S.C. § 547(c)(1):

> (1) Both the debtor and the creditor must intend the transfer to be a contemporaneous exchange;
> (2) The exchange must, in fact, be contemporaneous; and
> (3) The exchange must be for new value.

Stevenson v. Leisure Guide of America, Inc. (In re Shelton Harrison Chevrolet, Inc.), 202 F.3d 834, 837 (6th Cir. 2000) (citation omitted). The party opposing avoidance bears the burden of proving the nonavoidability of a transfer under § 547(c). 11 U.S.C. § 547(g).

Plaintiff has raised a genuine issue of material fact with respect to whether Debtor and Defendant intended the transfers to be contemporaneous exchanges, noting that there was no set time or time limit for Defendant to draw the fuel for which it prepaid Debtor. Because of § 547(g), Defendant bears the burden of proving that it *did* intend the exchanges to be substantially contemporaneous. Because of Kress, the court is also forced to view the facts in the light most favorable to Plaintiff. As best the Court understands the parties' agreement, however, when Truck World prepaid for the fuel, no delivery date was established; the right to draw the fuel was open-ended. Truck World almost always did so within fifteen days, and often substantially sooner. It was under no obligation to do so, however. This suggests that Laurel Valley, at the very least, did not care one way or another when Truck World picked up the fuel, as long as the payment was immediate. Truck World could have claimed it two days, two weeks, or two months later. Thus, Defendant has not carried its burden under the first requirement of the § 547(c)(1) defense, precluding summary judgment on Count VII of the complaint.

#### 2. Subsequent New Value

Defendant also raises a partial affirmative defense under 11 U.S.C. § 547(c)(4). That section provides that the trustee may not avoid a transfer

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

8

(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

Id. Defendant does not argue that this is a complete defense, and Plaintiff does not argue that it is no defense. The dispute here appears to be largely one of valuation, which, for the same reasons discussed earlier, is a heavily fact-laden issue and is not appropriate for summary judgment on the current record. The legal dispute appears to be the extent to which Truck World gave Laurel Valley new value, though the motion and response appear to speak largely at cross-purposes here.

Defendant wired Debtor $1,485,000.00 for 900,000 gallons of diesel fuel at $1.65 per gallon on July 6, 2005. It received only 217,290 gallons; Laurel Valley did not fill the remaining 682,710 gallons of the order. Truck World asserts that it is entitled to a credit against any preference judgment against it in the amount of 682,710 times $1.65, or $1,126,471.50.

Plaintiff's argument focuses on the entire series of transactions in the ninety days prior to filing, not on just the final and partially-unfilled prepaid order. Plaintiff's argument ignores the facts of Defendant's argument entirely; it does not even mention the final wire transfer as a separate transaction, nor the unfilled part of that final order. Instead, Plaintiff's argument is that the proper measure of the preferential transfer is the fair market value—not the discounted value—of the property transferred, less the cash received subsequently from Defendant. Defendant paid Debtor $9,980,676.94 over the entire preference period in a number of installments (prepayments). During the same period, Debtor transferred to Defendant fuel that Plaintiff contends was worth at least $10,717,355.00 (using the OPIS low price, excluding Laurel Valley), and which actually cost Debtor $11,069,458.00 (at Marathon's rack price). Plaintiff therefore alleges that the net preferential transfer is at least $1,016,448.40 even granting that Defendant subsequently gave new value.

The Court finds that both parties are correct on the law. The positions of the parties are not inconsistent, save for Plaintiff's ultimate valuation figure. In order to put creditors in the same position they would have been had the preferential transfers never occurred, the estate must be recompensed to the extent that the fair market value of the property lost to the estate exceeded the fair market value of what it gained in return. If Defendant were actually able to return the vast quantity of diesel fuel that it had purchased, in a chapter 7 case such as this, the estate would reduce that property to cash on the open market. Therefore, using fair market value, not the actual purchase price, actually effectuates the intent of the Code to put the estate's creditors in the same position in which they would been sans the transfer. However, while Defendant will owe the estate to the extent that it received more than it gave, it may also credit against that tally the extent to which it gave more than it received—i.e., to the extent that it gave value for which it received nothing in return. This credit will not be $1,485,000 less the discounted price of the fuel it received, however; it will be $1,485,000 less the full fair market value of the fuel it received from that last order, and only assuming that Truck World's unsecured claim is not disallowed for other reasons. The fair market value is a genuine issue of material fact and will need to be determined at trial.

9

### E. Plaintiff's Objection to Defendant's Claim

Defendant's motion for summary judgment on Count VIII of Plaintiff's complaint, which consisted of Plaintiff's objection to Defendant's claim, is contingent on prevailing as a matter of law on all of its other counts. Under 11 U.S.C. § 502(d), the Court is to disallow the claim of any entity that is a transferee of a transfer avoidable under 11 U.S.C §§ 544, 547 or 548, unless the entity has paid the amount due to the estate. Since issues of material fact preclude summary judgment on any of the other counts, let alone all of them, summary judgment on Count VIII is likewise inappropriate.

## III. Conclusion

Owing to the multitude of genuine issues of material fact yet unresolved in this case, Defendant's motion for summary judgment must be denied as to all counts.

**/S/ RUSS KENDIG**

---
RUSS KENDIG
U.S BANKRUPTCY JUDGE

**Service List:**

Joel K Dayton
Chrysanthe E. Vassiles
Gordon D. Woolbert, II
Black, McCuskey, Souers and Arbaugh
220 Market Ave., South, Suite 1000
Canton, OH 44702

David A Zdunkewicz
Andrews Kurth LLP
600 Travis Suite 4200
Houston, TX 7702

Jerry M Bryan
6 Federal Plaza Central
Suite 1300
Youngstown, OH 44503